David RIGGS

v.

N. W. MILLER et al.

Civ. A. No. 79–0103–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Nov. 26, 1979.

As Amended Dec. 11, 1979.

---

5. See p. 8, *supra*, for a discussion of appropriate regulatory history.

David Riggs, pro se.

Raymond A. Carpenter, Jr., Asst. U. S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

In this action, the plaintiff seeks declaratory, injunctive and monetary relief under 28 U.S.C. § 1331 (1970) based on an alleged violation of his Fifth Amendment due process rights. This action arises from an incident which occurred 24 October 1978. On that date, the plaintiff was charged with being in an unauthorized area in violation of Rule 402 *Prohibited Acts in Federal Penal and Correctional Institutions.* The charge was brought by defendant Miller. The plaintiff was subsequently found guilty of the offense at an Institutional Disciplinary Committee hearing on 13 November 1978.

In his original complaint, the plaintiff presented the following claims:

1. The defendant Miller's actions in bringing the disciplinary charges against the plaintiff were taken in bad faith;

2. Rule 402 is unconstitutionally vague in that it fails to indicate the meaning of "unauthorized," though it proscribes being in an unauthorized area;

3. At his hearing, plaintiff was denied the opportunity to call witnesses in his behalf;

4. Plaintiff was also denied the assistance of a staff representative;

5. A member of the hearing panel participated in investigating the charges; and

6. The statement of reasons given for the I.D.C. decision was constitutionally inadequate.

When it first reviewed these claims, the Court found that the plaintiff had failed to name proper defendants as to most of his claims in that none of the named defendants was a member of the hearing panel. The plaintiff was therefore instructed to amend his complaint within 20 days in order to name additional defendants or to explain the role that the parties he had already named actually played in depriving him of his due process rights at the hearing. The order of the Court is dated 10 July 1979. Thus the time allowed the plaintiff has now more than expired, and yet the Court has received no response from the plaintiff in regard to this case.

However, the plaintiff has filed a subsequent habeas action, Civil Action No. 79–0697–R. In that case, the respondent filed an answer supported by affidavits and documentary materials. One of the documents, a progress report submitted to the United States Parole Commission and dated 26 June 1979, contains information pertinent to the matter at hand. The document states that the misconduct report for being in an unauthorized area was expunged from the plaintiff's record.[1] This action came in response to the plaintiff's administrative remedy request. A copy of the progress report is attached to this memorandum and order.

In view of the fact that the misconduct report has been removed from his file, the plaintiff is clearly not entitled to certain of the forms of relief he has requested. He sought injunctive relief for the purpose of requiring the defendants to remove the references to the unauthorized presence offense from his files, and this has already been accomplished. He also sought to enjoin the defendants from enforcing Rule 402 against him. It now appears that the plaintiff is not suffering adverse effects from application of that rule. Nor has

---

1. The incident report shows that the plaintiff was charged with being in an unauthorized area on 24 October 1978. The progress report, however, speaks of a report of 23 October 1978 for the same offense. Because the record contains no evidence that the plaintiff was charged with being in an unauthorized area on consecutive days, the Court assumes that the report which was expunged from the plaintiff's file is the report that gave rise to this action.

there been a showing that there is an actual threat that the plaintiff will be charged with being in an unauthorized area under circumstances where he did not have reasonable cause to know that he was, in fact, in such an area. As in *Preiser v. Newkirk,* 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), the plaintiff's subjective fear of being charged with a violation of Rule 402 is "indeed remote and speculative and hardly casts [a] 'continuing and brooding presence' over him . . . ." *Id.* at 403, 95 S.Ct. at 2335 (citing *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974)). The Court thus finds there is no continuing case or controversy to support a claim for injunctive relief.

■ The plaintiff has also sought a declaratory judgment to the effect that the actions and motivations of the defendants violated his constitutional rights. Again, the plaintiff has successfully challenged the disciplinary committee's disposition through the administrative remedies open to him. The misconduct report has been removed from his files and the United States Parole Commission has been specifically instructed not to consider the report as a part of the plaintiff's record. The plaintiff is thus no longer faced with adverse consequences resulting from the actions he is challenging. Under these circumstances, his claim for declaratory relief is also moot. *See Inmates v. Owens,* 561 F.2d 560 (4th Cir. 1977). Because the report regarding the institutional offense has been expunged from the files, there is no longer " . . . a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). The claim for declaratory relief will therefore not be considered.

■ Finally, the plaintiff has sought compensatory and punitive damages totalling $45,000.00 from the defendant Miller for bringing disciplinary charges against him in bad faith. That the report has been removed from the file does not moot this claim for monetary relief. *See Wycoff v. Brewer,* 572 F.2d 1260, 1262 (8th Cir. 1978); *Mawhinney v. Henderson,* 542 F.2d 1 (2d Cir. 1976); *United States ex rel. Jones v. Rundle,* 453 F.2d 147 (3d Cir. 1971). The Court will consider the record to determine whether there is any other basis for dismissal.

The plaintiff alleges that on a number of occasions in October, 1978, he was allowed to visit prison officials in Maryland Hall at the Petersburg facility without first obtaining a formal pass. In particular, he states that the defendant Miller allowed him to visit Maryland Hall without a pass on 17 October 1978. He further contends that on 24 October 1978, he was in Maryland Hall visiting a prison official who had allowed him to come to his office without a pass. This staff member is identified only as "Mr. Nelson" in the pleadings. The complaint indicates that the visit to Mr. Nelson was made in order to arrange for the plaintiff to tutor an illiterate inmate. At one point in his visit, the plaintiff was standing outside Mr. Nelson's door. According to the complaint, the defendant Miller passed by and the plaintiff engaged him in conversation. The conversation evidently escalated into an argument, at the end of which the defendant charged the plaintiff with being in an unauthorized area in violation of Rule 402. The plaintiff now alleges that the defendant used the "disciplinary machinery to retaliate against plaintiff for expressing [his] opinion . . . ." Also, the complaint alleges that the defendant brought the charge "knowing full well that plaintiff was not guilty of having violated Rule 402, since plaintiff had been repeatedly and routinely permitted to visit Maryland Hall staff members without pass formality . . . ."

■ The Court will assume that the plaintiff's allegations could state common law claims of malicious prosecution and malicious abuse of process. *See Dellums v. Powell,* 184 U.S.App.D.C. 275, 566 F.2d 167 (D.C.Cir.1977). The plaintiff alleges that there was no reasonable basis to believe that he had committed an offense since the

defendant had allowed the plaintiff to visit him in Maryland Hall without a pass only the week before. Assuming this allegation to be true, liability may lie at common law for initiation of baseless charges. In regard to the claim of malicious abuse of the disciplinary process, the plaintiff contends that, by bringing the charges against him, the defendant sought to penalize him for entering into an argument. The plaintiff alleges that this action was intended to restrict his freedom of speech. Again, this allegation could give rise to a common law tort action. The question for resolution in this case, however, is whether the allegations state claims cognizable in a *Bivens*-type action. The Court finds that the actions of the defendant Miller, while certainly not to be commended, did not violate any constitutional right of the plaintiff. *Compare Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). The merits of the claim will not be considered, therefore, because the Court is without jurisdiction to do so.

The question of whether action by government officials rises to the level of a "constitutional tort" has been considered most often under Section 1983. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court held that a claim for defamation by a State official was not actionable under Section 1983, absent a showing of an injury to a liberty or property interest recognized under the Due Process Clause. *Id.* at 701, 96 S.Ct. at 1160. As the Court stated, the Due Process Clause is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." *Id.* The Supreme Court has also refused to constitutionalize the tort of false imprisonment under the specific facts in *Baker v. McCollan,* —— U.S. ——, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The premise for the Court's holding is simply expressed: "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Id.* at 2695. Finally, it has been held that "[m]edical malpractice does not become a constitutional violation mere-

ly because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). In all of these instances, the fact that a tort may have been committed by a State officer did not confer a federal right of action.

It must be determined here whether the related common law torts of malicious prosecution and abuse of process infringe upon constitutionally protected rights, rooted in the Fifth Amendment, so that the plaintiff may bring this action under 28 U.S.C. § 1331 (1970). Again, reference will be made to decisions which have dealt with this issue under Section 1983 since there is no basis to differentiate between the Fifth Amendment and the Fourteenth Amendment in this respect. In *Morrison v. Jones,* 551 F.2d 939 (4th Cir. 1977), the Fourth Circuit considered a malicious prosecution claim raised under Section 1983, and it adopted the common law rule that termination of the proceedings in a manner not unfavorable to the plaintiff is a necessary element of the claim. *Id.* at 940. The specific point the Court was called upon to decide in *Morrison* related to the appropriate period of limitations in the case, and the decision did not undertake to consider the analytical developments in *Paul v. Davis, supra,* and *Estelle v. Gamble, supra* in relation to a claim of malicious prosecution. Such an analysis is required in this case.

The fact that a federal correctional officer may have engaged in conduct constituting the common law torts of malicious prosecution and abuse of process should not automatically confer a right of action under the Fifth Amendment. A recent decision, *Pyles v. Keane,* 418 F.Supp. 269 (S.D.N.Y. 1976), places the claim of malicious prosecution in the proper constitutional perspective:

> Conduct that may give rise to an action for malicious prosecution may also constitute a violation of Section 1983 if, acting under color of state law, the defendant has thereby subjected the plaintiff to a deprivation of constitutional magnitude. *See Nesmith v. Alford,* 318 F.2d 110, 126

(5th Cir. 1963). But, standing alone, a claim for malicious prosecution—although it may describe conduct reprehensible in the extreme—is not enough to support a cause of action under Section 1983. *Id.* at 276. The claim of abuse of process should be considered in the same light.

 According to the plaintiff, the defendant Miller brought the disciplinary charges in order to show that he had the last word in the argument. The plaintiff maintains that he was retaliated against for expressing his opinion which assertedly violated his First Amendment rights. However, the plaintiff's allegations raise the bickering, argumentative conversation which he relates to the Court to the unjustifiably lofty position of constitutionally protected speech. *See Chitwood v. Feaster,* 468 F.2d 359 (4th Cir. 1972); *Jawa v. Fayetteville State University,* 426 F.Supp. 218 (E.D.N.C.1976). The plaintiff's speech was not intended to reach anyone other than the defendant Miller. *Compare Cavey v. Levine,* 435 F.Supp. 475 (D.C.Md.1977). In fact, this case presents nothing more than a run-of-the-mill dispute between a prison official and a prisoner, the likes of which must occur daily throughout the prison system. At most, the defendant Miller unfairly exercised his authority in this situation. But the exercise of authority in controlling the relations of prison officials and prisoners is so intermeshed with the legitimate concern for discipline that a court should intervene only under exceptional circumstances. *See Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 129–132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pittman v. Hutto,* 594 F.2d 407, 411 (4th Cir. 1979).

Intervention is not warranted in this case because internal disciplinary review procedures proved sufficient to correct any inequity. The misconduct report the plaintiff received in connection with the incident has been expunged from his record. The plaintiff has not been prevented in any tangible way from communicating his ideas to anyone other than, perhaps, Mr. Miller. In short, the Court does not perceive a constitutional deprivation and is therefore without jurisdiction to consider the malicious prosecution and malicious abuse claims under the Fifth Amendment. They will be dismissed.

An appropriate order shall issue.