**Ronald V. DELLUMS et al., Plaintiffs,**

v.

**James M. POWELL et al., Defendants.**

**Civ. A. No. 2271–71.**

United States District Court,
District of Columbia.

Feb. 20, 1980.

Warren K. Kaplan, Melrod, Redman & Gartlan, Washington, D. C., for plaintiffs.

Michael E. Zielinski, Asst. Corp. Counsel, Robert J. Franzinger, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

BRYANT, Chief Judge.

Plaintiffs sued former Attorney General John N. Mitchell, United States Capitol Police Chief James M. Powell and others for violation of various constitutional and common law rights. The claims against Mr. Mitchell were severed and still await trial. The jury held Mr. Powell liable for various constitutional claims and also for malicious prosecution. On appeal the United States Court of Appeals for the District of Columbia Circuit upheld the verdict against Mr. Powell on all the constitutional claims ex-

cept the eighth amendment claim,[1] but reversed the jury's verdict of malicious prosecution and remanded for a new trial. *Dellums v. Powell*, 566 F.2d 167, 191–94 (D.C. Cir. 1977).

On March 15, 1979 Messrs. Mitchell and Powell filed a Motion for Judgment on the Pleadings as to Malicious Prosecution. This motion raises an immunity issue that was never squarely presented to the Court of Appeals during Mr. Powell's appeal.[2] In addition, new Supreme Court and United States Court of Appeals decisions have been handed down since the United States Court of Appeals for the District of Columbia Circuit heard Mr. Powell's appeal in 1977. Thus, this court has given careful consideration to the defendants' motion.

In their Motion for Judgment on the Pleadings defendants argue, *inter alia*, that as government officials they are entitled to an absolute immunity from plaintiffs' common law claim for malicious prosecution.

In 1959 the Supreme Court held in *Barr v. Matteo* that a federal official is absolutely immune from liability for any act falling within the outer perimeter of the official's line of duty. 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434. In 1978 the Supreme Court again considered the issue of immunity for government officials. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. The *Butz* Court ruled that *Barr v. Matteo, supra*, did not afford absolute immunity to federal officials regardless of their transgressions. On the contrary, the Court held that only a quali-

fied immunity is available to officials accused of violating the Constitution. 438 U.S. at 507–08, 98 S.Ct. at 2911.

Plaintiffs draw the court's attention to the following passage in *Butz* :

" . . . we are confident that *Barr* did not purport to protect an official *who has not only committed a wrong under local law*, but has also violated those fundamental principles of fairness embodied in the Constitution." [438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (emphasis added in plaintiffs' brief); Plaintiffs' Opposition to Federal Defendants' Motion for Judgment on the Pleadings as to Malicious Prosecution at 6.]

Plaintiffs understand this passage from *Butz* to mean that "[a]lthough malicious prosecution is a common law tort, when . . . it arises from an attempt to infringe constitutional rights, the officials involved are entitled to only a qualified immunity." Plaintiffs' brief at 6. However, the Supreme Court expressly stated in *Butz* that it was only concerned with constitutional issues and that the lowering of immunity from absolute to qualified should be limited to the constitutional area. 438 U.S. at 495 n. 22, 98 S.Ct. at 2905.

After the *Butz* decision the Ninth Circuit confronted a case such as the one at bar where both constitutional and common law causes of action were involved. In *Miller v. DeLaune*, the plaintiff sued an official of the Internal Revenue Service on both fifth amendment and common law tort grounds. In a per curiam opinion a panel

---

1. *Dellums v. Powell*, 566 F.2d 167, 197 (D.C. Cir. 1977). Although it affirmed the first amendment verdict, the Court of Appeals remanded the issue of the size of damages. *Id.* at 194–96.

2. In Mr. Powell's May 21, 1976 brief to the Court of Appeals he states that "[w]e recognize, of course, that this Court in *Apton v. Wilson* . . . held that only a qualified immunity was available to the Government officials responsible for dealing with demonstrations." Records & Briefs, United States Court of Appeals, District of Columbia Circuit, vol. 2787. This concession was in Mr. Powell's brief dealing with the verdict on the constitutional claims and there is no reason to believe

that the Court of Appeals was presented with the absolute immunity issue with respect to the malicious prosecution count. In addition, were this concession regarding *Apton* to be construed as covering the malicious prosecution count, it would be a mis-reading of *Apton*. *Apton*, by its own terms, deals only with absolute immunity in the constitutional area. *Apton v. Wilson*, 506 F.2d 83, 90 (D.C. Cir. 1974).

Mr. Powell contested the malicious prosecution count in a short passage in an entirely separate brief and dealt only with the factual issues surrounding the count. Reply Brief for Defendant-Appellant Powell at 12, Records & Briefs, United States Court of Appeals, District of Columbia Circuit, vol. 2787.

of Judges Koelsch, Ely and Van Pelt held that the plaintiff's constitutional claim was subject to qualified immunity under *Butz*, but that "current law compels the conclusion that a Government official . . . acting within the outer perimeter of his or her line of duty, is absolutely immune from state or common-law tort liability." 602 F.2d 198, 200 (9th Cir. 1979). *See also, Evans v. Wright*, 582 F.2d 20, 21–22 (1978).[3] Thus, although *Butz* set a lower standard of immunity for officials when constitutional violations are charged, it did not disturb the immunity doctrine insofar as it relates to common law causes of action. Defendants' motion for judgment on the pleadings is therefore granted as to plaintiffs' common law action for malicious prosecution.

But while the parties have briefed and the court has dallied over the problems associated with the plaintiffs' common law claim of malicious prosecution, that is not all that is involved here. In the plaintiffs' complaint, filed on November 11, 1971, they allege that defendants violated their rights to due process and equal protection of the laws by various acts including malicious prosecution. Complaint at 11. This raises the entirely separate issue of whether the plaintiffs can sue and recover damages for malicious prosecution as a violation of the due process clause of the fifth amendment. This issue can be resolved only by determining, first, whether plaintiffs have a cause of action under the due process clause and, second, if such a cause of action lies, whether a damages remedy is an appropriate form of relief. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

■■■ Even if plaintiffs prove all the elements necessary to a common law claim of malicious prosecution, *see, Dellums v. Powell*, 566 F.2d 167, 191 n. 65 (D.C. Cir. 1977), they must still demonstrate that defendants' actions in maliciously prosecuting them reaches a constitutional level under the fifth amendment.[4] As the Supreme Court ruled last year in *Baker v. McCollan*, not every tort committed by officials of the government violates the Constitution. 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). In 1964 the Fifth Circuit suggested in *dictum* that the common law tort of malicious prosecution may well constitute a violation of the federal civil rights statutes. *Nesmith v. Alford*, 318 F.2d 110, 126, *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964). This modest suggestion has provoked no small amount of confusion in the courts over the last fifteen years, but the general consensus seems clear: the traditional elements of a common law claim of malicious prosecution also make out a claim for violation of the due process clause. Even though acquittal is a predicate to the claim, malicious prosecution is a violation of the specific constitutional prohibition against the deprivation of liberty without due process of law. *Hampton v. Hanrahan*, 600 F.2d 600, 630 (7th Cir. 1979); *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3rd Cir. 1977); *Morrison v. Jones*, 551 F.2d 939, 940 (4th Cir. 1977); *Riggs v. Miller*, 480 F.Supp. 799 (E.D.Va.1979); *Voytko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 323 (D.N.J.1978); *Atkins v. Lanning*, 415 F.Supp. 186, 190–92 (N.D.Okl.1976), *aff'd*, 556 F.2d 485 (10th Cir. 1977); *Clark v. Illinois*, 415 F.Supp. 149 (N.D.Ill.1976); *An-*

---

3. While the court finds no support in *Butz* for plaintiffs' theory that a common law tort committed for the purpose of violating a constitutional right merits only a qualified immunity for the defendant, the court does not mean to dismiss such a novel doctrinal development out of hand. Rather, the court reaches the plaintiffs' destination by a different path. See the discussion of the fifth amendment's due process clause, *infra* at 72–74.

4. Before the Supreme Court decided in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971),

that a private party can base a cause of action directly on the Constitution, the federal courts confronted this malicious prosecution issue in the context of 42 U.S.C. § 1983 suits alleging a violation of the due process clause of the fourteenth amendment. Since the due process clauses of the fifth and fourteenth amendments do not differ in this regard, the court will refer both to cases treating malicious prosecution counts based directly on the fifth amendment and to those cases where claims are based on the fourteenth amendment via § 1983. *Riggs v. Miller*, 480 F.Supp. 799 (E.D.Va.1979).

*thony v. White*, 376 F.Supp. 567, 572 (D.Del. 1974); *Muller v. Wachtel*, 345 F.Supp. 160 (S.D.N.Y.1972). *But see Paskaly v. Seale*, 506 F.2d 1209, 1212 (9th Cir. 1974) (*dictum*); *United States ex rel. Rauch v. Deutsch*, 456 F.2d 1301, 1302 (3rd Cir. 1972); *Martin v. King*, 417 F.2d 458, 462 (10th Cir. 1969); *Pyles v. Keane*, 418 F.Supp. 269 (S.D.N.Y. 1976); *Hahn v. Sargent*, 388 F.Supp. 445, 452 (D.Mass.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Since the common law tort of malicious prosecution is also a violation of the due process clause plaintiffs may sue in a *Bivens*-type action basing their cause of action directly on the fifth amendment. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 546 (1979). However, as stated above, this does not end the inquiry. There remains the issue of a remedy.

In both *Bivens* and *Davis* the Supreme Court held that "in appropriate circumstances a federal district court may provide relief in damages for the violation of constitutional rights if there are 'no special factors counselling hesitation in the absence of affirmative action by Congress.'" *Davis v. Passman*, 442 U.S. at 245, 99 S.Ct. at 2276–2277, *quoting Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). When government officials bring the power of the state to bear on individuals by prosecuting them without probable cause and with a malicious intent, they violate the Constitution in a manner that cries out for redress. But in accordance with the Supreme Court's mandate in *Bivens* and *Davis* this court feels constrained to determine whether there are special factors "counselling hesitation" in providing a damages remedy and to balance any such factors against the need for a remedy.

Claims of malicious prosecution entail precisely such factors. Although at this stage the defendants do not fall within the "initiating a prosecution and presenting the State's case" scope of *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1974), and cannot receive absolute immunity as prosecutors,[5] there are several factors stated in *Imbler* that counsel against providing damages for malicious prosecution claims in federal courts.

Even when a law enforcement official is not initiating a prosecution or presenting evidence to a jury, he or she is often engaging in sensitive activities such as investigating and evaluating alleged crimes. The *Imbler* Court expressed a concern that "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423, 96 S.Ct. at 991. This concern is particularly trenchant because such suits could be expected with some frequency, *id.* at 425, 96 S.Ct. at 992, and because such suits would often require a virtual retrial of the criminal offense originally charged. *Id.* Finally, prosecutors and other law enforcement officials are uniquely vulnerable to such suits. "Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation." *Id.*

The *Imbler* Court quoted Judge Learned Hand on the analogous prosecutorial immunity issue and this court has no quarrel with application of Judge Hand's reasoning here:

As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. [*Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), *quoted in Im-*

---

**5.** Whether Mr. Mitchell can avail himself of a prosecutorial immunity defense must await further development of the facts in the case.

*bler v. Pachtman*, 424 U.S. at 428, 96 S.Ct. at 994.]

No matter how serious the need for redress is on the part of the public, the public's own interest lies in the denial of a damage remedy for malicious prosecution claims based on the fifth amendment.

This case presents yet another twist, however. The plaintiffs do not allege a malicious prosecution, pure and simple. They also allege that they were maliciously prosecuted "for the purpose of coercing plaintiffs from exercising their First Amendment rights . . .." Complaint at 8. When the state's machinery is misdirected for the express purpose of violating a substantive constitutional right, such as the first amendment rights to peaceable assembly, free speech and petition the government, no society-wide interest in law enforcement can outweigh the imperative of a remedy in the courts. Therefore, this court rules that if plaintiffs can demonstrate at trial that they were maliciously prosecuted for the express purpose of violating their first amendment rights they may recover damages for this violation of their right to due process under the law. The court hastens to add that under the rule of *Butz* the defendants are still entitled to a qualified immunity, even for a violation of the fifth amendment.

It is therefore ORDERED that Messrs. Mitchell and Powell's Motion for Judgment on the Pleadings as to Malicious Prosecution is granted as to the common law action for malicious prosecution and denied as to the constitutional action for malicious prosecution.